Okay, will the clerk please call the first case of the morning? 1-250-494-WC AIM National Lease Appellant by Daniel Egan v. Illinois Workers' Compensation Comm'n et al., Julie Bulow, Appalachia by Lindsey Strom. Mr. Egan, you may proceed. Thank you. Good morning, Your Honors. Daniel Egan on behalf of the Appalachian Employer, AIM National Lease. Before I begin, as you know, I've appeared in front of Your Honors many times. This is the first time I'm appearing in front of Your Honors without Justice Hoffman, and I wish to extend my condolences to the Court and to welcome Justice Taylor to this panel. It's been a long time since I've argued, and I think you can all agree that Justice Hoffman was influential and a force, and he will be greatly missed. Very true. Thank you. May it please the Court, again, Daniel Egan on behalf of the Employer, AIM National Lease. We're here to discuss four issues in the case, causal connection, two other issues regarding medical bills, the award of medical and the award of prospective medical, and an IME issue. Your Honors, as you know, Ms. Bulow was involved in an admitted accident on August 13, 2019, when she tripped and fell, something that most of us have probably done in our lifetime. She was pretty beat up, but she was recovering from her injuries during the weeks after her accident, and she, in fact, was able to travel to South Carolina and participate in a breast cancer walk. As you know, she injured her lower extremity, her left, I believe her left knee was injured. It may have been her right knee, but that is a minor point, but she injured her left ankle, and that was the point. She had told her oncologist prior to going to South Carolina that she was feeling well, planning on participating in this walk, and after she completed her walk and returned to her oncologist in November of 19, she told her doctor that she had completed this walk. The medical records with regard to this accident, however, show a different situation. They show that after this walk, she had a change in the condition of her ankle. She complained to her orthopod, Dr. Hong, who noted her condition to be different. She told her physical therapist that she had increased pain in her ankle after being on her feet all weekend out of town, and regardless of her testimony, it's clear that she complained to her doctors that she had a change in her condition. Dr. Hong, in fact, described a change in complaints. He had changes in diagnoses. He had additional diagnoses, and she had a change in her ability to perform activities of daily living and her job. Now, these are the same things that this court considered in the national freight case when considering whether or not there's a change, I'm sorry, whether or not there's a break in the causal connection between an accident and the subsequent incident, and your honors, we submit to you that new symptoms, increase in symptoms, increase in treatment are all things that break the causal connection chain, and in this instance, Ms. Bulow's condition after this participation in her walk in South Carolina caused a change in the condition of her ankle such that it was no longer causally related to her work accident. We would ask that your honors reverse the commission in full regarding the issue of causal connection, and we would ask that this matter be denied in full after petitioner's activities in South Carolina. I understand your honors may not agree with that position, and we also argue that the medical should not have been awarded as it was, and this is maybe a more significant issue than the causal connection issue if you consider that the causal connection issue is properly found. First of all, we again suggest that no medical should have been awarded, but if so, a great amount of this medical was awarded based upon a subrogation statement from Blue Cross and Blue Shield, and an incomplete one at that. The commission relied on petitioner's 12, which was a consolidated statement of benefits, excuse me, and relied upon benefits provided as opposed to what was actually paid by Blue Cross and Blue Shield. Your honors, I submitted on behalf of respondents, as respondents exhibit 31, the complete spreadsheet of bills that were paid and processed and in the amounts that they were paid and processed by Blue Cross, and I included in my appendix two of those statements that show that the actual payments by Blue Cross were far less than the benefits claimed and the benefits awarded. More concerning to me, however, is the fact that there are instances where there are no bills or no records, and yet the commission based upon this consolidated statement of benefits medical bills. For example, the commission specifically did not award the Rush medical bill, which was Rush medical bill based upon the records petitioner's six, as there was no bill. However, they awarded it under the consolidated statement of benefits, even though there's no bill. In other instances, there were no records and no bills, and yet still awarded. If I may go through the exhibits very quickly, petitioner's one was the working well records, and there were bills and records, and those records actually, or bills actually showed respondents had paid. The same for petitioner's two, Bone and Joint Institute was paid. There were bills and records. Petitioner's three, Midwest Orthopedics at Rush, the commission denied after September 27 of 2021 through January 13 of 2022 because there were no records to support the charges that were submitted. The Loyola bill was, I'm sorry, petitioner's four was Dr. Hameed's report from Loyola. There was no award of the bill, and it's not listed in the Blue Cross record. I believe, however, that that may have been commented upon in the arbitrator's decision and awarded. Petitioner's five was records from Midwest Anesthesia and Pain. Those bills and submitted records we take issue with on the basis of causation with the exception of one bill. Petitioner's six were the records from Rush Medical Center. The only records in evidence from Rush was from March 10 of 2022. There was no bill that this was awarded based upon a consolidated statement of benefits from Blue Cross and Blue Shield, and I submit to your honors that it was awarded in the full amount rather than in the amount actually paid, the negotiated rate by Blue Cross and Blue Shield as shown in Respondents 31. For March 23 of 2022, there's no record for Rush. There's an operative report in someone else's record, but there are no records from Rush, and there's no bill, and yet this was awarded based upon the Blue Cross subrogation statement, and it was awarded in the amount of $169,000 when the record from Blue Cross shows that they paid approximately $50,000. Your argument, Mr. Egan, is that the consolidated statement, which was probably the main information for a subrogation claim, okay, that those records do not have the bills attached to them in certain instances? I mean, you've gone through that, I think. Petitioner's 12 was simply a four-page, five-page, I don't know how many pages, but it was simply a listing of various medical providers and the amount paid and the amount of benefits provided. Respondents 31, which was the Blue Cross consolidated statement of benefits, plus their spreadsheet actually shows a breakdown of what they paid, what was accepted, what was written off, what the petitioner paid, but there are instances where there are no bills to support those payments, and there are instances where there are even no records to support that payment, and the Commission still awarded the bills without payment or without records to support those bills simply based upon it being listed in Petitioner's 12 and then awarding it in the benefit provided and not the actual amount paid by Blue Cross. Okay. Did I answer your question, Judge? Well, it's rather complex because now we're into what is the amount that actually is appropriate under the Act? I mean, negotiated rates, etc. Is that another issue? Is that the problem? Well, we can't. We know what the negotiated rate is if you look at Respondents Exhibit 31. Okay. Because we know what Blue Cross, we know what the amount of the bill was, we know what they accepted, we know what they paid, or we know what was written off, and we know what went to deductible and copays. We can figure out what was paid for each of those, but there are no itemized bills. We don't know, for instance, if what was actually paid on those dates related to the treatment in this case based solely on a consolidated statement of benefits when there's no record or no itemized bill. Okay. So, your concern is not with the credibility that those monies were actually paid out. I mean, there's no fraud in putting down we paid this when indeed we didn't pay that amount. But the argument is that what the service was, it's unable to be determined whether it's related to the injury. Related to the injury as well as what the fee schedule might be. Okay. And to determine whether the fee schedule is actually lower. In some instances, fee schedule is 53.2%. In other instances, it's a specific number depending upon the CPT code, none of which is in evidence, and none of which is available to us based upon this record. So, what is our standard of review on this award? I believe that there are multiple standards. I believe that there's the manifest weight standard, whether this decision is contrary to the manifest weight of the evidence. And with regard to the medical bills, I believe it is in part against the manifest weight of the evidence because in instances there is no evidence. But as well, as a matter of law, because we know what section 8.2D of the Act says, you need bills, you need records, you need the data elements to compare these records and they're missing. And you can interpret 8.2 and say, we need the employers entitled to this information, it's lacking, and the petitioner did not prove these issues as a matter of law as well. Okay. Thank you. I'd stop there. Mr. Egan, I have a question. I mean, is there any dispute that of all the medical services that were provided that they were all subject to a negotiated rate? Let me put it this way. Were all the medical services that were provided, were they all covered under a negotiated rate? Or is that not clear from the record? I, well, we paid some of the bills and those were certainly subject or paid pursuant to fee schedule or whatever arrangement the employer or the workers comp carrier had with those medical providers. I believe that after Dr. Candido's exam in January of 2020, medical was then submitted to the petitioner's group carrier, which was not our group carrier. I'm not claiming the credit under 8J, it was the petitioner's, may have been the spouse's carrier. So those bills would be subject to, again, negotiated rate, fee schedule, or the actual charges, whichever is less. May I ask a question with regard to that statement? So you cite Rocio Perez, a 2018 case, workers comp case. I do. And your sentence there on page 32 of your brief, an employer's liability for medical treatment cost is limited to the lesser of the applicable fee schedule, the actual charges, or the negotiated rate. And that's cited to paragraph 19 of that order that you cite. And I'm just a little confused with, when I read 19, paragraph 19, the only place that says lesser is in section 2 there. It says here under the plain language of section 8A of the Act, the employer is required to pay, one, the negotiated rate, if applicable. Two, the lesser of the health care provider's actual charges, or three, according to a fee schedule. So it seems like lesser in your sentence is put before all three of those things, whereas in the order, lesser only applies to the lesser of the health care provider's actual charges. Can you explain, am I looking at this wrong? Is there something that you can clarify in my mind how it's the lesser of all three of those items, or is it just the lesser of the actual charges? I believe if you go back to Tower Automotive as well, the court in Tower Automotive indicated that the least or the lesser of the three charges are what is paid, the negotiated rate, the fee schedule, or the actual charge. Are there any further questions from the court? One last housekeeping matter that I noticed. Page 25 of your brief, where you're laying out different bills that were submitted, there's obviously quite a few there, but page 25, starting at the top of that page, throughout that rather large paragraph that encompasses most of it, there's two areas that seem like in the statement of facts would be inappropriate for the argument that's presented about midway down there, starting with the line that starts with December 30th, but to the shoulder and should not have been awarded, such an award is against the manifest weight of the evidence and must be vacated, and then the very last line of that paragraph, the shoulder bill should be denied as not causally related and against the manifest weight of the evidence, seems inappropriate for the statement of facts. Maybe it's referred to back to that statement and then in the argument section, make the arguments and those assertions, but again, I'm just kind of peculiar on that. I may be the only one that feels that way, so I just wanted to point it out. Your honor, I apologize. Is my time up? Yeah, oh yeah, it has been up for a while. Oh, I didn't. No, no, no, yeah, can you wrap it up? Yeah, thank you. You'll have time and reply, of course. Yes, yes, no, I understand. Thank you. I apologize for running over. No, no, that's fine. I think some of this because we were asking questions too, so okay. Anyway, you'll have time and reply, counsel. Thank you. Counsel Strom, you may respond. Thank you, your honors. May it please the court, my name is Lindsay Strom. I represent the injured worker, Julie Buelow, in this case. This is a case about following the law and the evidence and the case law that was already set forth by this honorable court. The standard on review, as that question was posed before, the standard on review is manifest weight. We know that a decision should not be set aside unless it is against the manifest weight of the evidence, and it is well settled law that the mere fact that an opposite conclusion can or is reasonable to be reached or that a reviewing court might have ruled differently does not justify a reversal of the administrative findings. Now, causal connection is something that was brought up. All of the lower courts agreed that there was a clear causal connection. Now, counsel likes to point out that my client went on a breast cancer walk and tries to put in records from her oncologist that she said that she was fine. Now, her oncologist is not treating her for the left lower extremity. So, if she said that she felt better, I'm assuming per the records that she was not talking about her foot. She was talking about the fact that she had had a lumpectomy. Now, the fact that the medical records from bone and joint specialist, Dr. Hong, state that she was having pain before and after are evidence that she was in pain the whole time. It's not like she was miraculously better, as counsel likes to portray, prior to going on this walk and then she went and then all of a sudden she was so much worse that it is now a break in the chain of causation. That's just simply not the case. She saw Dr. Hong on October 3rd of 2019 and he noted that she still had a lot of nerve pain, but that she was improving taking gabapentin and an injection was administered that day. He said, according to his plan, that she could work light duty work and of course the respondent wanted her to work light duty work and that it was okay for her to walk four to six hours per day without a boot. That's the doctor that respondent got her set up with. If she's able to walk four to six hours a day without a boot per the doctor, then why is it such a big deal that she went to this breast cancer walk? May I stop you right there? Yes. Was the walk, as it is written in your brief, a 30-mile walk or was that a typo and it was a 30-mile walk? No. As my client testified, it is a 30-mile walk over the course of three days. She testified that it's 10 miles per day, but that not everybody walks and that she did not walk the whole time and she was mainly in a golf cart. She was there, she was at the walk, but she didn't walk 30 miles. The testimony is quite clear on that because we went over it a lot and my client was adamant and the arbitrator found her to be credible. The other courts found her testimony to be credible that she did not walk 30 miles. That is just not the case. Even if she did walk, she could still walk according to the doctor that she was seeing four to six hours per day. If the respondent was more than willing to bring her back to work on duty, then it's all part of the same thing. She has the plan from her doctor that says that she can walk four to six hours. Now, did she walk four to six hours during this breast cancer walk? No. Her testimony is clear that she did not and that she spent the majority of the time in a golf cart. However, she did testify that it was important for her to be there, being a breast cancer survivor and also knowing other breast cancer survivors. Yes, she did travel and she did go there, but did she walk 30 miles? No. No, she didn't. Thank you for that. You're welcome. When she also saw Dr. Hong in follow-up on October 21st of 2019, he noted that she was doing better with the gabapentin and that she still had left heel pain, but that it was improved from the she had. He also noted, again, that she could walk four to six hours per day without the boot, but he wanted her to stay in physical therapy. Then the breast cancer walk was from October 24th, 2019 to October 28th. When she came back, she noted that she still was having pain, numbness, tingling, shooting pains. As things continued with Dr. Hong, he thought that she had signs of complex regional pain syndrome. That's where the biggest issue is with the respondent is that they believe that she does not have CRPS based upon their independent medical exam with Dr. Candido. However, there are a plethora of doctors that the petitioner saw, starting with Dr. Hong, who first mentioned the CRPS and then tried to refer her to a pain management doctor. Respondent said, no, we're sending you to an independent medical exam, put her at rush with Dr. Hameed, Kamran Hameed, who also thought that she had CRPS. Not one doctor that she saw on her own, first with Dr. Hameed, which was their doctor, and then on her own, they all thought that the signs and symptoms were consistent with CRPS. And the respondent, even after they got Dr. Hameed's report, which was in petitioner's favor, then they set her up with Dr. Hameed, I'm sorry, with Dr. Candido, because he's a pain management doctor. Once they sent her to Dr. Candido, he gave them the denial that they wanted, and they denied all further treatment. So as a result, the petitioner had to use her Blue Cross Blue Shield. And that's where the next argument comes in about what respondent is the law, which it is not. The law says under Section 8A, which Justice Barberos correctly noted, that there are three different options. It's not just what the fee schedule is or the lesser of the fee schedule. It is under Section 8A quite clear that there are different options. There's the fact that it's the negotiated or contracted rate, or, and that's an or, the lesser of the fee schedule. But it's not, it has to be the lesser of all of them. We know per the case law in Tower and Perez, that this court has held that it's not only the fee schedule. It is the contracted or negotiated rate, or it could be the fee schedule. Further, respondent also asserts that there has to be CPT codes in order to figure out what the fee schedule is. But again, that's not the law. That is not what this court has held. That is not what any of the lower courts have held. So the circuit court pointed out quite- I understand your point about that. So let's focus on a negotiated rate. Did you submit documentation for all of your clients' medical services, which explained the service, the date of service, and indicated the negotiated rate? There are medical records that were admitted as exhibits from Rush University Pain Center. And for those charges, there is the lien statement, which is from Blue Cross Blue Shield, which this court has accepted in other cases, as I mentioned in Perez, in Tower, and in Springfield Urban League. And therefore, we submitted- Would the lien statement reflect the negotiated rate? Yeah. Yes, it does. In the exhibit, there are two portions. There's the charges, and then there's the contracted rate. And so on that statement, it's very clear where she was seen and what the charges were and what was actually paid. So all we've asked for is what was actually paid. And that's what was said- And does it describe the service that was provided? It doesn't describe- It doesn't specifically describe the service that was provided, but it does- So to Mr. Egan's point, then, how can they confirm whether or not the service relates to the injury? Because it's with the providers that they have the records for. They know what the dates were, and they know what the procedures were based on the records that were provided. So you have to- Sorry, Justice Holdridge. So you have to sort of rebuild- I mean, you have to sort of put all this together and figure it out. And whose burden is that? Whose burden is it to figure it out? Well, whose burden is it to do all the work to determine whether the expenses- you can recover the expense? Well, I mean, Your Honor, that's a great question. It's technically the respondent's burden, because the respondent is the one that has to determine the fee schedule according to the case law. So if Mr. Egan had wanted to put in his briefs what the fee schedule was, that could have been done based upon the bills that were already provided. But the law doesn't say that it's the petitioner's burden to do any of this. My burden as the petitioner's attorney is to put in all the records and the bills that substantiate the treatment, which was done. Now, the fact that they want to try to pay less because they think that the fee schedule is going to do that for them is not what the law states. And in the circuit court brief, the Honorable Judge Duffy stated that the respondent's argument was misplaced because Section 8A explicitly provides for the possibility of the negotiated rate, which is exactly what the Blue Cross Blue Shield lien shows. It shows what the negotiated rate was. It shows where the provider's charges were and what they were. And it's all in the medical records as long as you link them up, which is the respondent's burden. It's the respondent's burden. Yes. Okay. Yes. I mean, we know there's three buckets here. Yes. Am I correct? Correct. Yes. Okay. So it's always the lesser of whatever's in the bucket will provide payment. How can I put that? The lesser of the three. Okay. Right. Well, not necessarily. No. As Justice Barbera stated that when you're reading Section 8A, it says that the employer shall provide the negotiated rate if applicable or the lesser of the health care provider's actual charges or according to a fee schedule. So the law does not say that it is mandatory to be the lesser of all of them. It specifically states in Perez that under the plain language of Section 8A, the employer is required to pay the negotiated rate if applicable, lesser of the health care provider's actual charges or according to the schedule. Counsel wants the fee schedule and only the fee schedule. And that's not what the law provides. So your position is that those documents qualify as negotiated rate payments for the services. Am I correct? Yes. On the Blue Cross Blue Shield lien, it states that these are the there on Petitioner's Exhibit 14. It says total benefits provided. And then it says build charges. So the total benefits provided were $208,342.16. The charges were $272,353.22. We're not asking for the charges. We're asking for the negotiated rate, which is the contracted rate with these providers. So that's where the argument comes in. And that's based upon the case law that this honorable court has already set forth in Springfield Urban League that says that this kind of Blue Cross Blue Shield ledger is more than acceptable, as well as Tower and Perez. It's very clear from the case law that you can accept a Blue Cross Blue Shield lien. You don't have to provide CPT codes. You do not have to provide what the fee schedule amount would be. All you have to do is put in that ledger with the records, which was done. And the courts below have stated that and the appellate court in the cases that I mentioned state that the negotiated rate is what should be paid, not the charges, but the here, the lesser, which is the negotiated. So help me out here. Okay. So you're limited on time here. Yes. And it seems like to be a big elephant in the room. Yes. Okay. So the Blue Cross Blue Shield negotiated rate is all that you're asking for for medical. In terms of that, those charges, yes. The other medical for the other providers that were not under the Blue Cross Blue Shield lien is what we're asking for as well, which is her treating providers. So those were already outlined in the briefs. The commission went through them at length. Those charges we expect to be paid per fee schedule or negotiated rate, but most of them don't have a negotiated rate or a contracted rate. Okay. So those, those would be the fee schedule aspect, right? Correct. Yes. The, the treating providers that were not on the Blue Cross Blue Shield lien. That is correct. Your honor. Your time is up, but we'll take questions from the court. I have a question. Counsel is every charge on that negotiated rate exhibit substantiated by other records that are in evidence treatment or other records that indicate what the treatment was for the date and the provider. Yes, your honor. Every single entry then, according to you in the negotiated rate exhibit is substantiated by evidence in the record. From my understanding. Yes, there are medical records that were put in from athletico from university pain physicians from. Thanks counsel. Second question is what about. Treatment for her shoulder. That was not a part of this claim. Really? She, the treatment that was it any part of the recovery? No, there no. And as the commission outlined, and as I acknowledged in the brief, there are some that are not. That are not part of this claim, like a dermatology visit. We don't have records for those because it's not part of the case. The records that we put in are the ones that are substantiated for university pain physicians and for the left ankle treatment. As the commission pointed out in their brief. The dermatology or, you know, some of these charges that are unrelated, we are not asking for those to be paid. Nor were they awarded in any of the records where they inside any records that could have been. Arguably paid or leaned. I mean, no, the respondent did not pay any of those charges. Thank you. Thank you. Further questions. OK, thank you, counsel. Thank you, Mr. Egan. You may reply. Yes, thank you. So. I handled the tower automotive case from trial through appeal. I handled. Probably 90% of the Rocio Perez case before I left my old firm. And I can tell you what the evidence was in those cases and what was relied upon to make the finding of negotiated rate in tower automotive. The petitioner put in an itemized statement of billing, which showed all the payments by the group health carrier and the deductibles and the write offs and so on and so forth. There was no blue cross lean, if you will, and I guess there's no such thing as a blue cross lean in workers comp. That's like fingernails on the chalkboard to me every time I hear it. But in tower automotive, there was a statement and I for this court went through and supplied a in my appendix in that in that case, a summary of the billing and the court relied upon that in Rocio Perez. We had the actual insurance carrier records. I think it was from Cigna, the spouses group carrier that showed all the payments. There was no blue cross blue shield subrogation claim letter that was used as support for the the award in either of those two cases. And and I know I don't know all the case law in Illinois, but I and I would be stunned if anyone accepted a blue cross blue shield subrogation statement as the amount of medical bills paid and form the basis of award sans medical records or bills. And in this case, there are missing records. There are there are no records from Rush Medical Center from March 23 of when the DRG was implanted permanently. There is an operative report in the university physician pain physicians records, but no records from Rush Surgery Center supporting one hundred and sixty nine thousand dollars worth of charges. And the other thing that I wish to. Emphasize is when you look at petitioners, 12, their blue cross subro statement that talks about the amount of the bill and the amount of benefits provided, it does not show what blue cross and blue shield actually paid. If you go to respondents exhibit thirty one. Heck, if you go to the appendix of my initial brief, I pulled it out and and with regard to those specific charges, you can see what the charges were, what was the accepted rate by Blue Cross, what Blue Cross paid if there was a deductible. And if the petitioner owed any of it, it's easily figured out at that point. But it's the petitioner's burden to put the appropriate evidence into the record for respondent to actually make make a calculation. And it's lacking in some in some instances in this case, as I stated at the outset. And for those reasons, I would ask that those bills be denied because the evidence is lacking. Let me stop you there for one second, please. The so Mr. Strahm suggested that the burden was different and said that all the evidence is there. It's a matter of cross referencing those dates on the Blue Cross Blue Shield to the medical records from the providers. Is that in fact the case? Are there are all of those records present and does it just take some legwork to to correlate all of them? I as I stated before, I don't believe there's anything from Rush for March twenty three of twenty two. That's one hundred sixty nine thousand dollars worth of bills. There's no records. Petitioner six only contains the March 10 of twenty twenty two records. I grant you there's an operative report, I think, in university pain physicians from March twenty three of twenty two. But that's not going to justify one hundred and sixty nine thousand dollars of surgical center records. And there's no bill from Rush for March 10 of twenty twenty two in the records. So I submit to your honors that no, the evidence is not there. All right. So last question on that topic, at least for me, if. I guess theoretically what she's saying is a Blue Cross Blue Shield with the information that it contains and. Records from that that you could correspond this date to that on the on the actual medical records from the providers, if those things are present, but provided as they are here, is that sufficient? To I mean, is that enough? Is it up to somebody else? Is it up to the respondent to to go ahead and do that legwork to figure out which bill corresponds to which date on that Blue Cross Blue Shield? No, I disagree with that statement that we tried the I think if this were before trial or in a settlement agreement that respondent will pay the bills, then it's our burden. But when you're coming to the Illinois Workers' Compensation Commission and asking for an award, you need to put all the evidence before the arbitrator because it's coming up to the commission. It's coming up to the circuit court and it's coming up to your honors. And if it's not in the record, it's a failure of you didn't provide it. It's not for us to then determine what is what and why isn't it there. Well, I guess what I'm asking is, is it in the record, but in separate forms? It's not. It's not correlated. It's not in the record. And when you say it's not in the record, do you mean the bill isn't in the record? Or do you mean there's no evidence that she was at rush? Well, we know she went to rush. So, I mean. Well, how do we know that? Is it in the record? Well, there's she. That's really all I. Is it in the record? Because ultimately, the issue is, is the commission's decision and against the manifest way of the evidence. And if she there's I mean, I'm wondering and I'm asking you, let me just finish the question. I'm sure you've got a great answer, but. But still, if there's evidence she was treated there, you know, during relevant dates, and then there's evidence of payment for the injury. And then there's evidence of payment by Blue Cross. Then how do we say that the commission's decision that that bill is owed by the employers against the manifest way of the evidence? That's because ultimately, you know, I hear you. You're right. The burden is on the petitioner. But here in appeal, it's on the appellate to say it's not supported. So we know she went to rush because petitioners exhibit six is records from rush on March 10th of 2022. So we know that. But there's no bill. And there's simply Blue Cross Blue Shield reference to the amounts. Thank you. We know that she had a permanent. I'm going to use the wrong term spinal cord implant. It's it's it's similar to that, but it's not D.R.G. whatever that's the stimulator. We know she had that on March 23 of 2022 because it's in, I think, university pain physicians as a surgical report or comment on it. And we know that it's that she had it at Rush Surgery Center because it's listed in respondents exhibit 31, the Blue Cross complete subrogation packet with their payments and and so on and so forth. But there is no bill and there is no actual record from Rush Surgery Center documenting one hundred and sixty nine thousand dollars worth of treatment. There's no record of that other than this operative report and someone else's record. So how are we supposed to figure out what we owe or whether we pay it? It's not in there at this point. She's asking the court to award it, but she's not giving the court a basis for awarding it. So, in other words, to put it in layman's terms, it's not itemized. It's not itemized. OK, that's layman's terms. It's not itemized. There's a there's a charge. There's a payment. But you're saying for what? Well, exactly. Well, OK, are you saying that or are you saying that the Blue Cross record does not indicate a payment? It's it's a schedule of payment or or something of that nature. Are you saying that those are paid by Blue Cross? According to respondents, 31, it shows that there were payments made by Blue Cross and you can't correspond those to the records from the providers that show the bill that would add up to that amount. Right. Thank you. Any further questions? OK, well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue. And at this time, the clerk of our court will escort you both from our remote courtroom and we'll proceed. Nice to see you, Your Honor.